WALKER (MARTIN v.). See Case No. 9,-170.

WALKER (MATTISON v.). See Case No. 9,-297.

---

## Case No. 17,079.

### WALKER et al. v. MISSISSIPPI VAL. & W. RY. CO. et al.

[2 Cent. Law J. 481.] [1]

Circuit Court, E. D. Missouri. July, 1875.

RAILROAD LIENS — PRIORITY OVER MORTGAGES — VALIDITY OF ACT—CONSTRUCTION.

[1. The legislature may pass an act making liens given by the act prior to all mortgages placed on the property "subsequent to the passage of" the act.]

[2. The phrase, "subsequent to the passage of this act," in such an act, means subsequent to its approval by the governor.]

[3. And the lien given by the act takes precedence of a mortgage placed on the property within the 90 days after the passage of the act, which the statute provides shall elapse before acts of the legislature shall take effect.]

Action by James M. Walker and others against the Mississippi Valley & Western Railway Company and others. The complainants, as trustees under two mortgages given by the railroad company to secure its bonds, brought suit in equity to foreclose them, and, among others, made defendants certain parties who had performed work and labor, and furnished materials in the construction and improvement of the railroad, and who claimed liens upon the railroad property under the act of the general assembly of Missouri, approved March 21st, 1873, entitled "An act to protect contractors, sub-contractors, and laborers in their claims against railroad companies or corporations, contractors or sub-contractors." The first mortgage was executed March 12th, 1872. The second mortgage was executed May 28th, 1873. At the time of the execution of the first mortgage the M. V. & W. Ry. Company was only authorized to own and operate a railroad from West Quincy, Marion county, Missouri, to Keokuk, Iowa, and from Canton, Mo. (a point about equi-distant from West Quincy and Keokuk), westward to the Missouri river. In January, 1873, the Mississippi Valley & Western Railway Company and two other railway companies consolidated, pursuant to the laws of Missouri and Iowa. The consolidated company retained the name of the Mississippi

---

[1] [Reprinted by permission.]

Valley & Western Railway Company, and was authorized to own and operate a railroad, from St. Charles, Missouri, to Keokuk. Iowa, and from Canton, Missouri, westward to the Missouri river. The first mortgage, therefore, covered the railroad property from West Quincy to Keokuk, Iowa, and from Canton westward. The second mortgage, made by the consolidated company, covered the same property, and, in addition thereto, the property of the railroad from West Quincy to St. Charles, and was a first mortgage upon that part of the railroad and property between those points, and a second mortgage upon that part of the railroad between West Quincy and Keokuk and from Canton westward. The bill charged that the liens of the defendants, if any, were inferior and prior to the liens of the mortgages. The defendants filed separate answers, and after alleging that they had liens, and had taken all the steps required by the lien law to preserve and keep alive their liens, charged that their liens were prior and superior to the lien of the mortgage executed May 28th, 1873, and were, therefore, the first liens on all that part of the railroad and its property between West Quincy and St. Charles, Missouri.

Agreed statements of facts were filed between the complainants and the lien claimants, by which it was admitted that the lien claimants had complied with the statute in preserving and keeping alive their liens. It was also admitted by the agreed statements that the work and labor was done, and the materials furnished in the construction and improvement of the railroad after June 20th, 1873. The second section of the lien law provides that the lien given by the law shall be prior to all mortgages or incumbrances placed upon the railroad and its property, subsequent to the passage of this act. There is no section of the lien law which says expressly that the act shall take effect from and after its passage, or at any particular time. The General Statutes of Missouri (2 Wag. St. p. 894, c. 5, § 4) provide that "All acts of the general assembly shall take effect at the end of ninety days after the passage thereof, unless a different time is therein appointed."

Two questions were presented and argued: 1. The constitutionality of the law as applied to mortgages upon the property where work and labor was done and materials furnished and made since the passage of the law. 2. When did the lien law take effect? The complainants, representing the bondholders, contended that the lien law was unconstitutional so far as it gave priority over mortgages existing when the work and labor and furnishing of materials were begun. The complainants also contended that the lien law had no force and effect, as to priority or otherwise, until the expiration of ninety days from its approval, namely, until June 19th, 1873. The lien claimants contended, that the law was constitutional, and that the phrase "passage of this act," as used in the second section of the lien act, meant the approval of the governor, namely, March 21st, 1873, and that the lien,

whenever acquired, was prior to all mortgages or incumbrances subsequent to that time.

Davis, Thoroughman & Warren and G. Edmunds, Jr., for complainants.

Theo. Bruer, Dryden & Dryden and James Hagerman, for lienholders.

Before DILLON, Circuit Judge, and TREAT, District Judge.

DILLON, Circuit Judge, delivered the opinion of the court, orally.

THE COURT held·

1. That it was competent for the legislature, and within the legitimate scope of legislative power, to provide in the act, entitled "An act to protect contractors, sub-contractors and laborers in their claims against railroad companies or corporations, contractors or sub-contractors," approved March 21st, 1873 (Sess. Acts 1873, p. 58), that the lien given by the act should be prior to all mortgages or incumbrances placed upon the railroad property subsequent to the passage of the act. There is no constitutional objection to such a provision. Phil. Mech. Liens, pp. 46, 47, § 30; Stonewall Jackson Loan & Building Ass'n v. McGruder. 43 Ga. 9; Hildebrand's Appeal, 39. Pa. St. 133; Blauvelt v. Woodworth, 31 N. Y. 285; Hicks v. Murray, 43 Cal. 515; Davis v. Bilsland, 18 Wall. [85 U. S.] 659.

2. The lien given by the lien act is prior to all mortgages or incumbrances placed upon the railroad and its property subsequent to March 21, 1873, the date of the approval of the law. The phrase "subsequent to the passage of this act," and in the second section of the act, means subsequent to the approval by the governor. And a mortgage lien placed upon the railroad and its property between the date of the approval of the act, to-wit:—March 21st, 1873, and June 19th, 1873, the end of ninety days after the approval, is subordinate and inferior to the lien of the contractor, laborer or material-man acquired under the lien act. As to the meaning of the phrase "passage of an act," see In re Tebbetts [Case No. 13,817] opinion of Judge Story; Johnson v. Fay, 16 Gray, 144. And as to when an act is passed, Logan v. State. 3 Heisk. 442; Wartman v. City of Philadelphia, 33 Pa. St. 202; People v. Clark, 1 Cal. 406; Brainard v. Bushnell, 11 Conn. 17; In re Richardson [Case No. 11,777].